In Re the Matters of: **Cheryl Kelsey KNUTSON and Ramsey County, Appellants,**

v.

**Mark Harold PRIMEAU, Respondent.**

No. C2–85–231.

Court of Appeals of Minnesota.

July 23, 1985.

Review Denied Oct. 11, 1985.

---

Jori L. Whitehead, Legal Assistance of Dakota County, Ltd., Burnsville, for appellants.

Graham Mish Butler, St. Paul, for respondent.

Heard, considered and decided by LANSING, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

LANSING, Judge.

Appellant Cheryl Knutson appeals from a judgment that awarded custody of one child to respondent Mark Primeau and transferred custody of the parties' other child from Knutson to Primeau. We reverse.

## FACTS

Knutson and Primeau are the unmarried parents of Joseph Mark Primeau, born June 12, 1978, and Matthew John Primeau, born December 24, 1980. Primeau was adjudicated the children's father and ordered to pay support.

Paternity for Joseph was adjudicated in 1978. The paternity order did not address custody, but Joseph remained in Knutson's care. Paternity for Matthew was determined in 1981. Although custody was not disputed or litigated, the paternity judgment expressly placed custody in Knutson.

Knutson was the children's primary caretaker from their birth until April 1, 1983. Primeau resided on and off with Knutson and the children until February 1982. He did not pay support regularly, and at the time of the hearing a substantial support arrearage remained.

In April of 1983 Primeau failed to return the children to Knutson after visitation and served her with an ex parte order directing temporary change of custody. Knutson was not notified of the hearing even though Primeau's attorney admitted he knew Knutson worked in the courthouse where the hearing was held. Primeau submitted an affidavit alleging that Knutson had an alcohol problem and was not willing to undergo chemical dependency treatment, but submitted no additional evidence corroborating the allegations.

On April 7, 1983, Primeau filed a motion for permanent custody. The family court referee continued temporary custody in Primeau, and a Court Services child custody evaluation was ordered preparatory to a full evidentiary hearing.

■ After the hearing in December 1983, the family court referee issued an order signed by the trial judge finding that Matthew's custody had been adjudicated in the 1981 paternity order but that Joseph's custody had never been adjudicated. Nonetheless, the referee applied the standard for an initial custody determination under § 518.17, subd. 1, to each child and placed permanent custody of both with Primeau. On review[1] of the order the trial court adopted the recommended custody award for Joseph but remanded for additional findings on the custody of Matthew, reasoning that the referee's proposed order would modify a prior custody award and must be justified under the modification standard of § 518.18.

On remand the referee, contrary to the district court's direction and to its own initial finding, found that Matthew's custody had never been adjudicated because the issue of permanent custody was not disputed or litigated in the paternity action. The referee therefore did not make the findings required by § 518.18, but instead found that permanent custody with Primeau was in Matthew's best interests under § 518.17, subd. 1, and that split custody was not in the children's best interest. The district court accepted these recommendations and gave custody of both children to Primeau.

## ISSUES

1. Did the trial court err in transferring Matthew's custody to Primeau under the best interests of the child standard of Minn.Stat. § 518.17?

2. Does the record support placing permanent custody of Joseph with Primeau?

**1.** Although the trial court referred frequently to "Rule 53 review" of a referee's proposed findings, findings in a custody matter are not "reviewed" because the trial judge "has the duty

## ANALYSIS

### I

The custody determinations in this case are burdened by the application of shifting legal standards, which to some extent reflects the uncertainty of the applicable law. Knutson argues that the modification standard, § 518.18, is the proper standard to apply to both custody determinations. Primeau contends that the best interest of the child standard, which governs initial custody determinations under § 518.17, applies.

The referee initially held that Matthew's custody had been determined in the paternity proceedings but that Joseph's custody had not been previously determined. Nonetheless, the referee applied the same initial custody standard of "best interest of the child" to Matthew's custody transfer as he did to Joseph's custody determination. The district court judge held that the proper standard to apply to Matthew's custody transfer was the modification standard under § 518.18 and remanded for those findings. On remand the referee reversed himself and found that Matthew's custody had never been determined because it was not disputed and litigated at the paternity adjudication. These findings were adopted by the trial court. We conclude that the district court's initial decision was correct, *see State ex rel. Gunderson v. Preuss*, 336 N.W.2d 546 (Minn.1983), and that the court erred in adopting the referee's revised recommendation.

■ Although Knutson and Primeau were living together and did not dispute custody, Matthew's paternity judgment expressly stated that Knutson "has custody of the child; the defendant [Primeau] has reasonable rights of visitation." In addition, Minn.Stat. § 257.66, subd. 3 (1980), which governed the paternity adjudication, directs that "[t]he judgment or order *shall* contain provisions concerning * * * custo-

and retains the ultimate responsibility to make an informed and independent decision." *Peterson v. Peterson*, 308 Minn. 297, 304, 242 N.W.2d 88, 93 (1976).

dy * * * of the child" (emphasis added). The initial determination of custody is res judicata even though the parties were living together at the time and did not dispute or litigate custody. *Cf. State ex rel. Gunderson v. Preuss,* 336 N.W.2d 546 (Minn. 1983) (supreme court found the modification standard applicable when custody has been adjudicated in a paternity action). Because Matthew's custody was adjudicated in 1981, the transfer of custody modified a prior order and should have been governed by the modification standard of § 518.18. *See Gunderson,* 336 N.W.2d at 547.

■ A change of custody cannot be sustained without the findings of fact required by § 518.18: (1) that a change has occurred in the circumstances of the child or custodian, and (2) that the modification of custody is necessary to serve the best interest of the child. *Gunderson,* 336 N.W.2d at 548. Section 518.18(d) further requires that

> the court shall retain the custodian established by the prior order unless:
>
>    *     *     *     *     *     *
>
> (iii) The child's present environment endangers his physical or emotional health or impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

■ No finding was made of any change in either Matthew's or Knutson's circumstances since the original award of Matthew's custody. Furthermore, this record would not support a finding that Matthew's physical or emotional health is endangered or that modification is necessary to serve Matthew's best interests. Matthew was in good health physically and emotionally, and Knutson's concern for him is evident throughout the record. It was an abuse of discretion to transfer custody of Matthew to Primeau on this record. We therefore reverse the determination and return his custody to Knutson.

## II

Joseph's 1978 paternity order did not address custody. This court recently held that where paternity has been determined but there has been no custody adjudication, the father is entitled to an evidentiary hearing to determine the custody award that serves the best interests of the child under Minn.Stat. § 518.17. *Morey v. Peppin,* 353 N.W.2d 179 (Minn.Ct.App.1984), *petition for review granted,* 360 N.W.2d 336 (Minn. 1985). In *Morey* the mother had been the child's primary custodian for more than three years when the father disputed custody. This court stated that although the mother

> is entitled to have the continuity of care she has provided * * * and the desirability of maintaining that continuity considered * * * she is not entitled to the protection of Minn.Stat. § 518.18 (1982) limiting change of custody, or to the [accompanying] procedural advantages * * *.

*Morey,* 353 N.W.2d at 182–83.

Under *Morey* the trial court may determine Joseph's custody de novo despite the five years he spent primarily in Knutson's care. However, we note that the case is on review before the Minnesota Supreme Court, and the determination of the appropriate standard is subject to change.

■ Irrespective of the outcome of *Morey,* we conclude that Joseph's custody award was indelibly flawed by the error of law in determining Matthew's custody. Findings of fact which are influenced by error of law are not final on appeal, and the evidence must be considered without the aid of the finding to determine whether it warrants the challenged conclusion. *See In re Holden's Trust,* 207 Minn. 211, 227, 291 N.W. 104, 112 (1940). In addition, a decision which would split custody of the children must be carefully scrutinized. *See, e.g., Rinker v. Rinker,* 358 N.W.2d 165, 168 (Minn.Ct.App.1984).

The trial court placed great emphasis on retaining the same custody arrangements for the two boys. It found that split custody was not in the children's best interest because it could impair the boys' emotional development, worsen the parents' volatile

interpersonal relationship, and would deprive the boys of the advantage of staying together in their turbulent situation. These findings are supported by the record, and we agree with the importance the trial court placed on keeping the boys together.

The trial court also found that "both parties are emotionally close to their children and both have the basic capacity to educate and raise the children," but went on to find "some question as to the adequacy of * * * cleanliness [of Knutson's] household;" that Primeau has the greater capacity to provide food, clothing, and medical care; that Knutson has a potential for abuse of drugs or alcohol; that she neglected Joseph's dental care; and that she is permissive and subject to manipulation.

The findings on Knutson's household cleanliness, drug and alcohol abuse, and permissiveness are unsubstantiated except for Primeau's allegations to the family court officer, and there is no showing that either child has been adversely affected by any of these alleged problems.[2] Primeau's greater capacity to provide for the children is also unsubstantiated, and the record shows that Primeau consistently failed to pay any support. The evidence regarding Joseph's dental care shows that both parents tried unsuccessfully to get dental care before the custody dispute began and that Joseph's problems may be inherited. A physician evaluating the children's health care over the past years stated that Knutson appeared to be responsible and to care well for the children.

Finally, the findings minimized testimony and a psychological evaluation indicating that Primeau had violent tendencies and an uncontrolled temper.

In determining the best interests of the child, the court should consider "[t]he length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." *Morey*, 353 N.W.2d at 182. The trial court gave no consideration to Knutson's five years as Joseph's primary caretaker and the desirability of maintaining that continuity.

Because the findings prejudicial to Knutson are not substantially supported, because of the importance of continuity of care over a five-year period, and because we share the concern of the trial court that the custody of the children should not be divided, we also reverse the custody award of Joseph and return custody to Knutson.

## DECISION

The trial court erred in transferring Matthew's custody without making the requisite findings under Minn.Stat. § 518.18, nor would this record support the necessary findings. We therefore return Matthew's custody to Knutson. Because the finding against split custody no longer weighs in favor of Primeau as a custodian, we also award Joseph's custody to Knutson.

Reversed.

---

**2.** The ex parte order which originally changed custody in this proceeding was supported by Primeau's affidavit, essentially alleging that Knutson had an alcohol problem. Ex parte orders changing custody may not be issued "except upon a finding by the court of *immediate* danger of *physical* harm to the * * * children." Minn.Stat. § 518.131, subd. 3(b) (emphasis added). The trial court made no findings, and Primeau's affidavit failed to demonstrate any immediate danger of physical harm. Because continuity of care is a critical factor in the final disposition, trial courts should be particularly careful in transferring custody based solely on the allegations of an interested party.